1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KELLY L. K.,[1]

                            Plaintiff,

                v.

ANDREW SAUL,
Commissioner of Social Security,

                            Defendant.

Case No. 5:20-cv-1773-MAR

MEMORANDUM AND ORDER

Plaintiff Kelly L. K. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income Benefits ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings consistent with this Order.

///

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

## PROCEDURAL HISTORY

On August 9, 2017, Plaintiff protectively filed her applications for DIB and SSI, alleging a disability onset date of May 2, 2011. Administrative Record ("AR") at 207–10. Plaintiff's applications were denied initially on December 13, 2017, and upon reconsideration on April 5, 2018. Id. at 94–95, 126–27. On April 23, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 147–49. On August 20, 2019, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ concerning her applications for DIB and SSI. Id. at 35–59. A vocational expert ("VE") also testified at the hearing. Id. at 56–65. On October 23, 2019, the ALJ issued a decision denying the applications. Id. at 15–28. Plaintiff filed a request with the Agency's Appeals Council to review the ALJ's decision, which the Council denied on July 8, 2020. Id. at 1–9, 205–06.

On August 31, 2020, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1. This matter is before the Court on the Parties' Joint Stipulation ("JS"), filed on June 17, 2021. Dkt. 24.

# II.

## PLAINTIFF'S BACKGROUND

Plaintiff was born on August 23, 1967. AR at 221, 260, 271. She was forty-three (43) years old on the alleged disability onset date and fifty-one (51) years old at the time of the administrative hearing.[2] Id. at 36, 66. Plaintiff has a high school education and work history as a cashier, file clerk, medical biller, factory supervisor, and telemarketer. Id. at 37, 56–59, 225–26, 234, 604. She alleges disability based on: (1) pinched nerve in her neck; (2) piriformis syndrome; (3) sacroiliac joint disfunction; (4) bone spurs; (5) degenerative disc disease; (6) fibromyalgia; (7) depression;

---

[2] By the hearing, Plaintiff was considered a person "closely approaching advanced age" under Agency regulations. AR 66, 80, 96, 111; see Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "persons closely approaching advanced age" as "age 50–54").

1    (8) anxiety; and (9) inability to sit upright or stand for long.  Id. at 224, 241, 246, 263,

2    274.

### III.

### STANDARD FOR EVALUATING DISABILITY

5            To qualify for benefits, a claimant must demonstrate a medically determinable

6    physical or mental impairment that prevents her from engaging in substantial gainful

7    activity, and that is expected to result in death or to last for a continuous period of at

8    least twelve (12) months.  42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715,

9    721 (9th Cir. 1998).  The impairment must render the claimant incapable of

10   performing the work she previously performed and incapable of performing any other

11   substantial gainful employment that exists in the national economy.  42 U.S.C.

12   § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

13           To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ

14   conducts a five-step inquiry.  Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020); 20

15   C.F.R. §§ 404.1520, 416.920.  The steps are:

16           (1) Is the claimant presently engaged in substantial gainful activity?  If so, the

17                claimant is found not disabled.  If not, proceed to step two.

18           (2) Is the claimant's impairment severe?  If not, the claimant is found not

19                disabled.  If so, proceed to step three.

20           (3) Does the claimant's impairment meet or equal one of the specific

21                impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so,

22                the claimant is found disabled.  If not, proceed to step four.[3]

23           (4) Is the claimant capable of performing work she has done in the past?  If so,

24                the claimant is found not disabled.  If not, proceed to step five.

25

---

26   [3] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's

27   [residual functional capacity]," or ability to work after accounting for her verifiable impairments.
     Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009) (citing 20 C.F.R.

28   § 416.920(e)).  In determining a claimant's residual functional capacity, an ALJ must consider all
     relevant evidence in the record.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

1          (5) Is the claimant able to do any other work?  If not, the claimant is found

2                 disabled.  If so, the claimant is found not disabled.

3  See Tackett, 180 F.3d at 1098–99; see also 20 C.F.R. §§ 404.1520(b)–(g)(1),

4  416.920(b)–(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001).

5        The claimant has the burden of proof at steps one through four, and the

6  Commissioner has the burden of proof at step five.  Ford, 950 F.3d at 1148;

7  Bustamante, 262 F.3d at 953–54.  Additionally, the ALJ has an affirmative duty to

8  assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If,

9  at step four, the claimant meets her burden of establishing an inability to perform past

10  work, the Commissioner must show that the claimant can perform some other work

11  that exists in "significant numbers" in the national economy, taking into account the

12  claimant's residual functional capacity ("RFC"), age, education, and work experience.

13  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); Tackett, 180 F.3d at 1098–99, 1100;

14  Reddick, 157 F.3d at 721.

## IV.

## THE ALJ'S DECISION

**A.    STEP ONE**

At step one, the ALJ found Plaintiff had not "engaged in substantial gainful activity since May 2, 2011, the alleged onset date."  AR at 17.

**B.    STEP TWO**

At step two, the ALJ found Plaintiff had "the following severe impairments: degenerative disc disease of the cervical spine status-post surgery, degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, fibromyalgia, chronic pain syndrome, diabetes mellitus, obesity, headaches, depressive disorder, and anxiety disorder[.]"  Id. at 17–18.

///

///

///

1  **C.      STEP THREE**

2        At step three, the ALJ found Plaintiff did not "have an impairment or

3  combination of impairments that meets or medically equals the severity of one of the

4  listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]"  Id. at 18.

5  **D.      RFC DETERMINATION**

6        The ALJ found Plaintiff had the RFC to perform light work[4] except:

7
        [S]he cannot climb ladders, ropes, or scaffolds.  [Plaintiff] can occasionally
8        climb ramps or stairs.  [Plaintiff] can frequently balance and occasionally
        stoop, kneel, crouch, or crawl.  [Plaintiff] can occasionally reach overhead
9        with the bilateral upper extremities.  [Plaintiff] cannot have exposure to
10       unprotected heights and moving or heavy machinery.  [Plaintiff] is able to
        understand, remember, and carry out simple, routine work tasks but not
11       at a production rate pace, for example, no assembly line jobs.  [Plaintiff]
12       can tolerate no more than occasional workplace changes.  [Plaintiff] can
        occasionally  push,  pull,  handle,  and  finger  with  the  bilateral  upper
13       extremities.

14  Id. at 20.

15  **E.      STEP FOUR**

16       At step four, the ALJ found Plaintiff was unable to perform her past relevant

17  work as a file clerk, telemarketer, medical biller, cashier, or assembler, as defined in

18  the Dictionary of Occupational Titles ("DOT").  Id. at 25–26.

19  **F.      STEP FIVE**

20       At step five, the ALJ found that "[c]onsidering [Plaintiff]'s age, education, work

21  experience, and [RFC], there are jobs that exist in significant numbers in the national

22  economy that [Plaintiff] can perform."  Id. at 26.  The ALJ found the VE's testimony

23
      _____

24  [4] "Light work" is defined as:
        [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects
25       weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is
        in this category when it requires a good deal of walking or standing, or when it involves
26       sitting most of the time with some pushing and pulling of arm or leg controls.  To be
        considered capable of performing a full or wide range of light work, [a claimant] must
27       have the ability to do substantially all of these activities.

28  20 C.F.R. §§ 404.1567(b), 416.967(b); see also Aide R. v. Saul, 2020 WL 7773896, *2 n.6 (C.D. Cal.
    Dec. 30, 2020).

1   that Plaintiff would be able to perform occupations such as counter clerk, rental clerk,

2   and laminating machine operator, was consistent with the DOT.  Id. at 26–27.

3                                                    **V.**

4                                    **PLAINTIFF'S CLAIMS**

5          Plaintiff presents two (2) disputed issues:  whether the ALJ properly considered

6   (1) Plaintiff's subjective pain and limitation testimony, and (2) the medical evidence

7   from Dr. Arul Doraiswamy.

8                                                    **VI.**

9                                    **STANDARD OF REVIEW**

10         Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's

11  decision to deny benefits.  The ALJ's findings and decision should be upheld if they

12  are free of legal error and supported by substantial evidence based on the record as a

13  whole.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742,

14  746 (9th Cir. 2007).

15         "Substantial evidence" is evidence that a reasonable person might accept as

16  adequate to support a conclusion.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th

17  Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  It

18  is more than a scintilla but less than a preponderance.  Id.  To determine whether

19  substantial evidence supports a finding, the reviewing court "must review the

20  administrative record as a whole, weighing both the evidence that supports and the

21  evidence that detracts from the Commissioner's conclusion."  Reddick, 157 F.3d at

22  720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court

23  . . . may not affirm simply by isolating a 'specific quantum of supporting evidence'"

24  (quoting Robbins, 466 F.3d at 882)).  "If the evidence can reasonably support either

25  affirming or reversing," the reviewing court "may not substitute its judgment" for that

26  of the Commissioner.  Reddick, 157 F.3d at 720–21; see also Molina v. Astrue, 674

27  F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than

28  one rational interpretation, we must uphold the ALJ's findings if they are supported

                                                    6

1  by inferences reasonably drawn from the record."), superseded by regulation on other

2  grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

3        The reviewing court may review only the reasons stated by the ALJ in her

4  decision "and may not affirm the ALJ on a ground upon which [s]he did not rely."

5  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  If the ALJ erred, the error may only

6  be considered harmless if it is "clear from the record" that the error was

7  "inconsequential to the ultimate nondisability determination."  Robbins, 466 F.3d at

8  885 (citation omitted).

9  **VII.**

10  **DISCUSSION**

11  **A.**     **THE ALJ FAILED TO PROVIDE SUFFICIENT REASONS FOR**

12  **REJECTING PLAINTIFF'S SUBJECTIVE COMPLAINTS**

13      **1.**     **Relevant facts**

14          **a.**     **Plaintiff's subjective complaints**

15        At the August 2019 hearing before the ALJ, Plaintiff testified that she last

16  worked in 2011 for a law firm in Iowa.  AR 37–38.  She stopped working there

17  because the firm was in a three-story building, and she was required to run up and

18  down the stairs all the time.  Id. at 37.  Also, she could no longer pull the files and lift

19  them.  Id.

20        She looked for another job until mid-2011, when she bent over one day and

21  felt pain that shot down the back of her legs.  Id.  The pain was so bad she could not

22  stand up straight for three (3) days.  Id.  Plaintiff saw a couple of doctors at that time,

23  but they could not determine the cause.  Id. at 38.  A third doctor discovered that she

24  had a ripped disc in her lower back.  Id.

25        Her chronic back pain also causes pain that goes down the back of her lower

26  legs down to her ankles.  Id. at 39.  Sometimes she feels numbness in her toes.  Id.  If

27  she pinches her disk, such as can happen while doing a task like vacuuming, the pain

28  is so bad she can't do anything and must lay in the fetal position for days.  Id.

7

1          In addition to her back issues, following magnetic resonance imaging ("MRI")

2    and computed tomography ("CAT") scans, medical professionals discovered she had

3    three "very bad" discs in her neck.  Id. at 40.  Her neck pain has caused nerve damage

4    which makes her hands constantly shake, tremble, and jerk, and her fingers twitch.  Id.

5    at 41, 49.  Sometimes, while writing, it can cause a pen to fly out of her hand.  Id. at

6    41.  Her right-hand is worse than her left.  Id. at 50.

7          Even though Plaintiff was already having back issues, doctors believed it was

8    more important to address her neck first.  Id. at 41.  In that regard, she had two (2)

9    neck surgeries.  Id.  In July 2018, she had a disc removed, and an artificial one put in.

10   Id.  However, the replacement disc malfunctioned and slid out.  Id. at 41–42.  So, she

11   had a second surgery in May 2019, where the doctor had to go back into her neck and

12   retrieve the disc out.  Id. at 42.  Doctors also placed hardware in her neck, but that did

13   not hold, so they fused her neck.  Id.  The hardware restricts her range of motion; she

14   cannot turn her head to look beyond her shoulder, and she has difficulty looking up

15   and down.  Id. at 43.

16         Plaintiff still has two other discs in her neck that doctors have not been able to

17   address, a "massive amount of arthritis," and bone spurs.  Id. at 44.  The bone spurs

18   are "like little hooks" that yank at her nerves all the time.  Id.  Her doctors indicate

19   she will need two (2) more surgeries to her cervical spine.  Id. at 44, 50.  She also

20   needs back surgery, which she hopes will take place by the end of the year.  Id. at 38,

21   51.

22         Further, Plaintiff has a joint disfunction, which causes problems with her hips

23   and walking.  Id. at 44.  She experiences pain all the way from her neck down to the

24   sacroiliac joint.  Id. at 45.  Medical professionals also discovered she has fibromyalgia

25   and chronic pain syndrome.  Id. at 40.  Her pain is level nine-and-a-half (9.5) out of

26   ten (10), without medication.  Id. at 45.

27         Plaintiff takes "a lot" of medication for her symptoms.  Id.  For her spinal

28   problems, she used to take Tizanidine.  Id.  Now she takes Dilaudid, which was

1   prescribed for her to take at home even though it is a "strong medication." Id. at 45,

2   51.  For her neck, she also took Hydrocodone.  Id. at 46, 51.  She takes Cymbalta and

3   Gabapentin for her fibromyalgia.  Id. at 51.  She also takes "pain pills" and muscle

4   relaxers for her back and neck.  Id.  Her physical pain has worn on her mentally,

5   causing psychological symptoms.  Id. at 53.  She sees a psychiatrist and has been

6   prescribed Zoloft, Abilify, and "Sterlite"[5] for her depression and anxiety.  Id. at 51,

7   53.  Some of the side effects of her medication are sleepiness, loss of appetite, and

8   weight gain.  Id. at 52.  She also has diabetes but that is under control with medication

9   and monitoring her sugar intake.  Id. at 54.

10          Plaintiff's condition interferes with her ability to work because she cannot sit or

11   stand for more than fifteen (15) to twenty (20) minutes before she has to switch

12   positions.  Id. at 46.  She can only switch between those positions for a couple of

13   hours before she must then lay down.  Id.  She also has to lay down and watch TV or

14   take a nap because her medications make her sleepy.  Id.  She is in the resting position

15   for at least four (4) or five (5) hours out of an eight (8) hour period.  Id. at 46–47.

16   Currently, she is not allowed to lift anything over five (5) pounds, or exercise.  Id. at

17   47, 52.  She cannot walk far, only about five (5) houses down and back.  Id.  Plaintiff

18   can drive but only short distances to the store and other local places.  Id. at 51.

19          Plaintiff was married for sixteen (16) years, but she's now separated and lives

20   with her mother.  Id. at 47–48.  They each have their good and bad days, and they

21   take care of each other.  Id. at 48.  In terms of assistive devices, Plaintiff uses a "hard

22   neck brace" when she rides in a vehicle.  Id.  When she sleeps, she uses a "soft brace"

23   on her neck.  Id. at 48–49.

24

25

26

27

28
[5] This drug is spelled phonetically in the transcript.  AR 51.  It is likely Plaintiff was referencing Sertraline, the generic drug name for Zoloft.  See id. at 637; Plumlee v. Pfizer, Inc., 2014 WL 695024, *1 (N.D. Cal. Feb. 21, 2014).

1    Plaintiff can no longer do her prior work in telemarketing because that requires

2    sitting "[a]ll the time." Id. at 53.  She also would not be able to use the keyboard due

3    to her hand problems. Id. at 53–54.

### b.    ALJ's decision

5    The ALJ rejected Plaintiff's subjective complaints for two (2) reasons:

6    (1) "[b]eyond sporadic injections and cervical surgery," Plaintiff was treated

7    conservatively; and (2) the objective findings in the record. Id. at 21–23.

### 2.    Applicable law[6]

9    When a claimant produces objective medical evidence of an impairment that

10   could reasonably be expected to produce the pain or other symptoms alleged, absent

11   evidence of malingering, "the ALJ may reject the claimant's testimony about the

12   severity of those symptoms only by providing specific, clear, and convincing reasons

13   for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and

14   internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

15   2004).  "The ALJ must state specifically which symptom testimony is [discounted] and

16   what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273,

17   1288 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir.

18   2015) (holding "an ALJ does not provide specific, clear, and convincing reasons for

19

20   _____

21   [6] Before the ALJ's decision, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p,
     2016 WL 1119029 (Mar. 16, 2016).  SSR 16-3p provides that "we are eliminating the use of the term

22   'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id.  Moreover,
     "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's

23   character" and requires that the ALJ consider all of the evidence in an individual's record when
     evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d

24   664, 678 n.5 (9th Cir. 2017) (as amended).  Thus, the adjudicator "will not assess an individual's
     overall character or truthfulness in the manner typically used during an adversarial court litigation.

25   The focus of the evaluation of an individual's symptoms should not be to determine whether he or
     she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10.  SSR 16-3p's elimination of the

26   word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the
     standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony."

27   Elizabeth B. v. Comm'r Soc. Sec., 2020 WL 1041498, *3 (W.D. Wash. Mar. 4, 2020); see also R.P. v.

28   Colvin, 2016 WL 7042259, *9 n.7 (E.D. Cal. Dec. 5, 2016) (stating SSR 16-3p "implemented a
     change in dictation rather than substance").

1    rejecting a claimant's testimony by simply reciting the medical evidence in support of

2    his or her [RFC]").

3          "If the ALJ's . . . finding is supported by substantial evidence, [a court] may not

4    engage in second-guessing."  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

5    However, an ALJ's failure to give specific, clear, and convincing reasons to reject the

6    claimant's testimony regarding the severity of the symptoms is not harmless, because

7    it precludes the Court from conducting a meaningful review of the ALJ's reasoning.

8    Brown-Hunter, 806 F.3d at 489.  Moreover, as mentioned, a court must "review only

9    the reasons provided by the ALJ in the disability determination and may not affirm

10   the ALJ on a ground upon which [s]he did not rely."  Orn, 495 F.3d at 630.  Courts,

11   therefore, may not speculate as to the basis for unexplained conclusions but, rather,

12   must only consider the reasoning actually given by the ALJ.  See Burrell v. Colvin, 775

13   F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ

14   asserts . . . [and] may not take a general finding . . . and comb the [AR] to find specific

15   conflicts." (citation omitted)).

16          **3.      Analysis**

17          As discussed below, none of the ALJ's purported reasons constitute "specific,

18   clear and convincing reasons" for rejecting Plaintiff's subjective complaints.

19                **a.      Treatment**

20          The ALJ discounted Plaintiff's subjective testimony because, "[b]eyond

21   sporadic injections and cervical surgery, . . . [her] symptoms were treated

22   conservatively, with medication."  AR 23–25.  This is insufficient for two (2) main

23   reasons.

24          First, reviewing Plaintiff's treatment as a whole, it is clear she has not received

25   conservative treatment.  It appears Plaintiff had injections in October and November

26   of 2016, May 2017, June 2017, more were recommended in September 2017 as an

27

28

                                                    11

1    alternative to surgery, and additional injections were ordered in June or July 2018.[7]  Id.

2    at 230, 266, 277, 497–98, 500–03, 522–26, 593, 683–87, 698, 704, 708, 714, 718, 724,

3    728, 734–37, 743, 745, 752, 761, 767, 772, 782, 787.  However, injections to certain

4    areas failed to provide relief.  Id. at 522, 525, 527 (Plaintiff "failed to obtain any

5    significant relief with injections"), 529 (same), 619 (noting past medical history

6    included "multiple" epidural injections), 708, 724, 735, 787.  Accordingly, Plaintiff

7    underwent the two (2) neck surgeries, in July 2018 and May 2019, that she testified

8    about at the hearing.  Id. at 614–16, 634–39.  Moreover, Plaintiff was prescribed

9    strong medications, including Gabapentin,[8] Tizanidine,[9] Dilaudid,[10] and Norco,[11] in

10   addition to her psychotropic medications, such as Zoloft.[12]  Id. at 227, 248, 259, 268,

11   279, 298, 301, 375–76, 473, 521, 603–04, 611, 625, 630, 637–38.  This is far from

12   conservative treatment.  See, e.g., Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th

13   Cir. 2014) (expressing doubt that "shots to the neck and lower back qualify as

14   'conservative' medical treatment"); Alexander C. v. Saul, 2020 WL 6321765, *4 (C.D.

15   Cal. Oct. 28, 2020) (spinal surgery, epidural injections, and narcotic pain medications

16   is "far from conservative" treatment); Sanchez v. Colvin, 2013 WL 1319667, *4 (C.D.

17   Cal. Mar. 29, 2013) ("Surgery is not conservative treatment.").

18

[7] The precise number and dates of the injections is not entirely clear as some documents are marked
19   "poor quality original," and handwritten date changes by medical professionals appear on some of
20   the treatment notes.  See, e.g., 683–87.
[8] "Gabapentin is a medication that was originally developed to treat seizure disorders such as
21   epilepsy.  It is also used to treat neuropathic pain.  Neuropathic pain is pain from inflamed or
     damaged nerves."  Escobar v. Smith, 2013 WL 6389034, *5 (E.D. Cal. Dec. 6, 2013).
22   [9] "Zanaflex (Tizanidine) is a skeletal muscle relaxant prescribed to relieve the spasms and increased
     muscle tone cause by multiple sclerosis."  McMillen v. Saul, 2019 WL 6878163, *12 (E.D. Cal. Dec.
23   17, 2019).
[10] "Dilaudid is the brand name of hydromorphone, a narcotic analgesic used to relieve severe pain."
24   Cox v. Berryhill, 2018 WL 2341752, at *7 (C.D. Cal. May 22, 2018).  It "produces effects similar to
25   heroin's."  United States v. Crowell, 9 F.3d 1452, 1452–53 (9th Cir. 1993).
[11] "Norco is an opioid-based medication for treating moderate to severe pain, consisting of
26   hydrocodone and acetaminophen."  Barbara A. v. Saul, 2021 WL 1110288, *3 (C.D. Cal. Mar. 23,
     2021).
27   [12] Zoloft (Sertraline) is used to treat major depressive disorder, obsessive-compulsive disorder, panic
28   disorder, post-traumatic stress disorder, premenstrual dysphoric disorder, and social anxiety
     disorder.  Plumlee, 2014 WL 695024 at *1 & n.1.

12

1       Second, the fact that Plaintiff may have received conservative treatment for

2  other impairments, or she tried and failed at conservative treatment "beyond" her

3  aggressive forms of treatment (AR 23–25), is not a sufficiently "clear" or

4  "convincing" reason to discount her testimony.  See Lambert, 980 F.3d at 1277;

5  Alexander C., 2020 WL 6321765 at *4 (fact that claimant was treated with

6  conservative care between surgeries "does not provide clear, if any, evidence of

7  [claimant]'s stability with conservative treatment"); Huerta v. Astrue, 2009 WL

8  2241797, *4 (C.D. Cal. July 22, 2009) (ALJ's reasoning that claimant's "course of

9  treatment, other than her neck surgery . . . has generally reflected a conservative

10  approach" insufficient because, in addition to neck surgery, claimant was referred for

11  pain management and received a series of epidural injections).

12       Therefore, the ALJ's reasoning that Plaintiff's subjective complaints were

13  inconsistent with her treatment does not constitute a "specific, clear, and convincing

14  reason" for rejecting her testimony.

15            **b.     Lack of objective medical support**

16       The only other rationale offered by the ALJ was the inconsistency between the

17  objective findings and Plaintiff's testimony.[13]  This alone is not a sufficient basis to

18  support the determination.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)

19  (lack of objective medical evidence to support subjective symptom allegations cannot

20  form the sole basis for discounting pain testimony); Rollins v. Massanari, 261 F.3d

21  853, 856–57 (9th Cir. 2001); Dschaak v. Astrue, 2011 WL 4498835, *1 (D. Or. Sept.

22

23  [13] The Commissioner also posits a third reason:  that the ALJ drew a negative inference from
Plaintiff's inconsistent statements in the record.  JS at 13, citing AR 25.  But the examples cited by
24  the Commissioner are merely additional objective findings about Plaintiff not appearing to be in
distress during a general examination, and her numeric motor strength level as objectively measured
25  by the treating professional.  JS at 13, citing 366, 416, 425, 533–84.  The Court views these findings
as part and parcel of the ALJ's reliance on the inconsistency between the objective evidence and
26  Plaintiff's testimony, not a separate reason for discounting it.  See Garrison, 759 F.3d at 1010
(district court's review is limited to only grounds relied upon by ALJ); see also, Lambert, 980 F.3d at
27  1278 ("providing a summary of medical evidence . . . is not the same as providing clear and
convincing reasons for finding the claimant's symptom testimony not credible" (citation and internal
28  quotation marks omitted; emphasis in original)).

1   27, 2011) ("[O]nce the[] other bases for the ALJ's decision were discarded as

2   erroneous, the ALJ's [adverse subjective testimony] determination could not rely

3   solely on conflicts with the medical evidence.").

4          As such, even if the ALJ's construction of the medical record was fair,

5   inconsistency between the record and Plaintiff's testimony, alone, would not be a

6   proper basis for rejecting her subjective complaints.  Thus, the ALJ's claim that

7   Plaintiff's subjective complaints were inconsistent with the objective findings in the

8   medical record does not constitute a "specific, clear, and convincing reason" for

9   rejecting Plaintiff's testimony.

10         **2.     Harmlessness**

11         Finally, the ALJ's error in rejecting Plaintiff's subjective complaints is not

12   harmless.  A decision of the ALJ will not be reversed for errors that are harmless.

13   Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citing

14   Burch, 400 F.3d at 679).  However, a reviewing court cannot consider an error

15   harmless "unless it can confidently conclude that no reasonable ALJ . . . could have

16   reached a different disability determination."  Id. at 1056.  In other words, legal errors

17   are harmless only if they are inconsequential to the non-disability decision.  Id. at

18   1055.

19         Here, the ALJ's opinion that Plaintiff could work and was not disabled

20   necessarily relied on the ALJ's rejection of Plaintiff's allegations regarding the limiting

21   effect of her impairments.  Therefore, the Court cannot find the ALJ's improper

22   analysis of Plaintiff's subjective complaints was harmless error.  See Brown-Hunter,

23   806 F.3d at 492–93 (ALJ's failure adequately to specify reasons for discounting

24   claimant testimony "will usually not be harmless").

25   ///

26   ///

27   ///

28   ///

14

1

## VIII.

2

## RELIEF

3 **A.    APPLICABLE LAW**

4       "When an ALJ's denial of benefits is not supported by the record, 'the proper

5 course, except in rare circumstances, is to remand to the agency for additional

6 investigation or explanation.'"  Hill, 698 F.3d at 1162 (citation omitted).  "We may

7 exercise our discretion and direct an award of benefits 'where no useful purpose

8 would be served by further administrative proceedings and the record has been

9 thoroughly developed.'"  Id. (citation omitted).  "Remand for further proceedings is

10 appropriate where there are outstanding issues that must be resolved before a

11 determination can be made, and it is not clear from the record that the ALJ would be

12 required to find the claimant disabled if all the evidence were properly evaluated."  Id.;

13 see also Reddick, 157 F.3d at 729 ("We do not remand this case for further

14 proceedings because it is clear from the administrative record that Claimant is entitled

15 to benefits.").

16 **B.    ANALYSIS**

17       Here, the Court concludes remand for further proceedings is warranted.  The

18 ALJ's assessment of the hearing testimony is intertwined with other issues raised in

19 the Joint Stipulation, including her consideration of medical evidence of Dr.

20 Doraiswamy, and ultimately the fashioning of the RFC.  Moreover, the ALJ

21 discounted Plaintiff's husband's third-party function report for some of the same

22 reasons the Court has found insufficient here, namely that Plaintiff's treatment was

23 "generally conservative."  AR 24–25; see Hiler v. Astrue, 687 F.3d 1208, 1212 (9th

24 Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline

25 to reach [plaintiff's] alternative ground for remand."); Augustine ex rel. Ramirez v.

26 Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not

27 address the other claims plaintiff raises, none of which would provide plaintiff with

28 any further relief than granted, and all of which can be addressed on remand."); see

1   also T.O. v. Saul, 2020 WL 1492712, *13 (N.D. Cal. Mar. 27, 2020) (remanding

2   because "[t]he ALJ's reasons for rejecting [claimant]'s wife's [function] report are

3   intertwined with the reasons for rejecting [claimant]'s own testimony that will require

4   reconsideration"); Vaughn v. Berryhill, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017)

5   (dispensing of exhaustive analysis of plaintiff's remaining issues because "[t]he ALJ's .

6   . . evaluations of [p]laintiff's [testimony] . . . are inescapably linked to conclusions

7   regarding the medical evidence").  Because it is unclear, considering these issues,

8   whether Plaintiff is in fact disabled, remand here is on an "open record."  See Brown-

9   Hunter, 806 F.3d at 495; Bunnell v. Barnhart, 336 F.3d 1112, 1115–16 (9th Cir. 2003).

10   The parties may freely take up all issues raised in the Joint Stipulation, and any other

11   issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

12                                              **IX.**

13                                      **CONCLUSION**

14         For the foregoing reasons, **IT IS ORDERED** that judgment be entered

15   **REVERSING** the decision of the Commissioner and **REMANDING** this action

16   for further proceedings consistent with this Order.  **IT IS FURTHER ORDERED**

17   that the Clerk of the Court serve copies of this Order and the Judgment on counsel

18   for both parties.

19

20    Dated:  July 30, 2021

21                                           HONORABLE MARGO A. ROCCONI
                                             United States Magistrate Judge

22

23

24

25

26

27

28

                                              16